**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------X
                              :
KIMAR FRASER                  :    Civil No. 3:22CV01014(SALM)
                              :
v.                            :
                              :
LT. FRANCO, C/O CASEY,        :
C/O SACERDOTE, C/O HUCKINS,   :
LT. THERIAN, C/O JOHN DOE,    :
LT. JOHN DOE, LT. GRIMALDI,   :
and NICK RODRIGUEZ            :    September 21, 2022
                              :
------------------------------X
```

**INITIAL REVIEW ORDER**

Self-represented plaintiff Kimar Fraser ("Fraser" or "plaintiff"), a sentenced inmate currently housed at Cheshire Correctional Institution ("Cheshire"),[1] brings this action relating to events occurring while he was housed at Osborn Correctional Institution ("Osborn") and Northern Correctional Institution ("Northern"), in the custody of the Connecticut Department of Correction ("DOC"). Plaintiff asserts claims

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Fraser was sentenced on June 28, 2019, to a term of imprisonment that has not expired. See http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=379979 (last visited September 20, 2022).

pursuant to 42 U.S.C. §1983 against nine current or former DOC employees. Defendants Lt. Franco, C/O Casey, C/O Sacerdote, C/O Huckins, Lt. Therian, C/O John Doe, and Lt. John Doe, are alleged to have worked at Osborn; Lt. Grimaldi is alleged to have worked at Northern; and defendant Rodriguez is alleged to be a District Administrator for DOC. See Doc. #1 at 2-4. All defendants are sued in their individual and official capacities. See Doc. #1 at 16.

I.   **STANDARD OF REVIEW**

Under section 1915A of Title 28 of the United States Code, the Court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). The Court then must "dismiss the complaint, or any portion of the complaint, if" it "is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b). Dismissal under this provision may be with or without prejudice. See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004).

A civil complaint must include sufficient facts to afford defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

2

Conclusory allegations are not sufficient. <u>See</u> <u>Ashcroft v.</u> <u>Iqbal</u>, 556 U.S. 662, 678 (2009). Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.

It is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" <u>Sykes v. Bank of Am.</u>, 723 F.3d 399, 403 (2d Cir. 2013) (quoting <u>Triestman v. Fed. Bureau of</u> <u>Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006)). However, even self-represented parties must satisfy the basic rules of pleading, including the requirements of Rule 8. <u>See</u>, <u>e.g.</u>, <u>Wynder v.</u> <u>McMahon</u>, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). A complaint, even one filed by a self-represented plaintiff, may be dismissed if it fails to comply with Rule 8's requirement "that a complaint must set forth a short and plain statement of the basis upon which the court's jurisdiction depends and of a claim showing that the pleader is entitled to relief." <u>Prezzi v. Schelter</u>, 469 F.2d 691, 692 (2d Cir. 1972).

## II.  <u>ALLEGATIONS OF THE COMPLAINT</u>

The Court accepts the following allegations as true, solely for the purpose of initial review.

On December 22, 2020, "plaintiff verbally expressed suicidal ideations to" defendant Franco. Doc. #1 at 8, ¶6. "Franco did not contact a mental health proffessional to intervene in the crisis but instead deployed chemical agent on the plaintiffs head, face, and upper torso area." Id. at 8, ¶7 (sic). Plaintiff was "physically assaulted with chemical agent, closed fists, and feets by" defendants Franco, Casey, and Sacerdote. Id. at 7-8, ¶5 (sic). After the assault, plaintiff "was placed in a 'Restrictive Housing Unit' under the management and orcastration of defendant ... Franco with multiple pending disciplinary reports." Id. at 8, ¶8 (sic). "Franco did not excuse himself from the remainder of the incident" in "direct violation of administrative directive 6.5[.]" Id. at 8, ¶9.

"On December 29, 2020 the plaintiff was transferred from the Osborn C.I. to Northern C.I." Id. at 9. ¶10. "During the transfer the plaintiff was assaulted and subjected to an excessive amount of force following a peaceful passive protest." Id. at 9, ¶11. "During the transfer" defendant C/O John Doe struck "plaintiff in the face and head area multiple times despite being told multiple times by defendant [Lt. John Doe] to 'stop punching him.'" Id. at 9, ¶12. Lt. John Doe "orcastrated the planed use of force and transfer on December 29, 2020 and gave specific instructions to his subordinates on said day and time." Id. at 9, ¶14 (sic). C/O John Doe "carried out the direct

4

orders of ... Lt. John Doe to physically involve himself into the planed use of force." Id. at 10, ¶15 (sic). C/O John Doe "disregarded" Lt. John Doe's "command to 'stop punching him' and continued to land closed fist strikes (punches) to the plaintiff's face and head[.]" Id. at 10, ¶16.

On February 3, 2021, defendant Lt. Grimaldi "conducted a disciplinary hearing involving the plaintiff" and found "the plaintiff guilty of the 3 disciplinary reports issued by" defendants Franco, Casey and Sacerdote. Id. at 10, ¶18, ¶17. "During the disciplinary hearing ... Grimaldi admitted having 'prior independent knowledge' of the allegation of misconduct on December 22, 2020 in which the plaintiff was being charged for." Id. at 11, ¶19. During the hearing, plaintiff told Grimaldi: "'There are no advisor reports for the offense I'm being charged with,'" in violation of Administrative Directive 9.5 ("A.D. 9.5"). Id. at 11, ¶20. "The plaintiff was never presented with all the evidence that was being used against him, such as photographs and supplemental reports," in violation of A.D. 9.5. Id. at 11, ¶21.

During the hearing, plaintiff told Grimaldi: that he believed there was a likelihood of fraud and/or misconduct "because the disciplinary reports were allegedly written by" Casey and Sacerdote while they "were supposedly at the hospital being treated for injuries[,]" id. at 11-12, ¶22; "that the

video evidence being used against him did not support the allegation of misconduct[,]" id. at 12, ¶23; that DOC policy was "not followed by having a mental health professional intervene for the allegation of misconduct[,]" id. at 12, ¶24; and that he had "concerns of having an 'un-fair' and 'unlawful' hearing because there were too many errors and process failures within the entire case." Id. at 12, ¶25.

Plaintiff "filed an inmate administrative remedy form, appealing" the guilty finding. Id. at 12-13, ¶26. "On February 19, 2021 a decision was recorded by defendant ... Rodriguez upholding" the finding at the hearing, "despite the plaintiff elaborating ... why each disciplinary report issued to the plaintiff should have been overturned." Id. at 13, ¶27.

Plaintiff asserts that as a result of the two alleged assaults on December 20, 2020, and December 29, 2020, he suffered "severe migraines, concushions, bruises ... lacerations," and Post-Traumatic Stress Disorder ("PTSD"). Id. at 13, ¶28 (sic). He further asserts that he was criminally charged in connection with the events of December 20, 2020, and "recieved excessive penalty sanctions." Id. at 13, ¶29 (sic).[2]

---

[2] The Court takes judicial notice of the State of Connecticut Superior Court website, which indicates that Mr. Fraser has been charged with two counts of assault on a public safety officer, with an offense date of **December 20, 2020**. See State v. Fraser, TTD-CR21-0184928-T (last accessed September 20, 2022). That case is awaiting a trial date. Notably, Mr. Fraser has also been

III. __DISCUSSION__

The Court construes plaintiff's Complaint as asserting the following claims: (1) an Eighth Amendment claim for excessive force against defendants Franco, Casey, and Sacerdote, based on the events of December 22, 2020; (2) a Fourteenth Amendment Due Process claim and/or Eighth Amendment Conditions of Confinement claim against defendant Franco, based on events occurring in or about December 22, 2020, through December 29, 2020; (3) a common law claim for libel against defendants Franco, Casey, Sacerdote, Huckins, and Therian, based on the reports those defendants submitted regarding the events of December 22, 2020; (4) an Eighth Amendment claim for excessive force against defendants C/O Doe and Lt. Doe, based on the events of December 29, 2020; and (5) a Fourteenth Amendment Procedural Due Process claim against defendants Grimaldi and Rodriguez based on the outcome of the disciplinary hearing and appeal in 2021.[3]

---

charged separately with two counts of assault on a public safety officer, with an offense date of **January 21, 2021**. See State v. Fraser, TTD-CR21-0184929-T (last accessed September 20, 2022). The Complaint makes no mention of any incidents occurring on January 21, 2021.

[3] The Complaint also includes the following assertion: "The plaintiff's right to medical care is guaranteed by the 8th amendment and those rights were violated on December 22, 2020 by [Franco] when he failed to have a mental health professional intervene before using force on the plaintiff." Doc. #1 at 15, ¶34. This passing and conclusory assertion, unsupported by factual allegations, fails to adequately present an Eighth Amendment claim for deliberate indifference to serious medical

**A.   Official Capacity Claims**

Plaintiff asserts claims against defendants in both their individual and official capacities for money damages. See Doc. #1 at 16, ¶37. Plaintiff states in a conclusory fashion that he seeks "Injunction relief," Doc. #1 at 26, but makes no specific request for injunctive relief. Furthermore, the events described in his Complaint would not support such relief; plaintiff seeks relief relating to events that are entirely in the past, and does not appear to seek to remedy any ongoing violation. See Vega v. Semple, 963 F.3d 259, 281 (2d Cir. 2020) (explaining that "suits for prospective relief against an individual acting in his official capacity may be brought to end an ongoing violation of a federal law[]" (emphasis added)).

Any claims for money damages against the defendants, who are state employees, in their official capacities, are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). "Section 1983 does not abrogate state sovereign immunity. Nor has [plaintiff] alleged any facts suggesting that the state has waived immunity in this case." Kerr v. Cook, No. 3:21CV00093(KAD), 2021 WL 765023, at *5 (D. Conn. Feb. 26, 2021) (citation omitted).

---

needs. Given the lack of factual allegations on this issue, the Court does not further address this assertion.

With no viable claim for injunctive relief, therefore, all claims against defendants in their official capacities must be dismissed.

Additionally, plaintiff's allegations arise from events occurring when he was detained at Osborn and Northern. However, plaintiff is now housed at Cheshire. See Doc. #1 at 2. "An inmate's transfer from a prison facility moots his claims for declaratory or injunctive relief against officials of the transferring facility." McCray v. Lee, 963 F.3d 110, 117 (2d Cir. 2020). Thus, any official capacity claims against defendants Franco, Casey, Sacerdote, Huckins, Therian, C/O John Doe, Lt. John Doe, and Grimaldi, are moot.

Accordingly, all claims against defendants in their official capacities are **DISMISSED, without prejudice.**

**B.  Excessive Force**

The Eighth Amendment protects inmates against punishments that "involve the unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976).

> To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective. First, the prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind. Second, he must allege that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions. Analysis of the objective prong is context specific, and depends upon the claim at issue[.]

Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015) (citations

and quotation marks omitted).

To meet the objective component, the inmate must allege that a defendant's conduct was serious enough to have violated "contemporary standards of decency." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quotation marks and citation omitted). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." Id. at 9 (citation omitted); see also Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).

In evaluating an allegation of excessive force by a correctional officer, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (citation and quotation marks omitted).

Plaintiff alleges that on December 20, 2020, he was "physically assaulted with chemical agent, closed fists, and feets by" defendants Franco, Casey, and Sacerdote. Doc. #1 at 7-

10

8, ¶5 (sic). This allegation is sufficient, for purposes of this initial review, to permit the claim to proceed to service against defendants Franco, Casey, and Sacerdote, in their individual capacities, for damages.

For purposes of initial review, plaintiff also adequately alleges an Eighth Amendment excessive force claim against defendant C/O John Doe, alleging that on December 29, 2020, defendant C/O John Doe struck "plaintiff in the face and head area multiple times despite being told multiple times by defendant [Lt. John Doe] to 'stop punching him.'" Doc. #1 at 9, ¶12. This allegation is sufficient, for purposes of this initial review, to permit the claim to proceed to service against defendant C/O John Doe, if he can be identified by plaintiff, in his individual capacity, for damages.

The Court does not find that the allegations against Lt. John Doe are sufficient to proceed to service of process. Plaintiff alleges in a conclusory fashion that defendant Lt. John Doe "orcastrated the planed use of force and transfer on December 29, 2020 and gave specific instructions to his subordinates on said day and time." Id. at 9, ¶14 (sic). However, he also expressly alleges that Lt. John Doe told C/O John Doe to stop assaulting plaintiff. See id. at 9, ¶12. The purely conclusory claim that an unidentified Lieutenant who attempted to stop an assault on plaintiff also somehow

11

orchestrated that assault is so convoluted and lacking in factual basis as to fail to state a cognizable claim. Accordingly, no Eighth Amendment excessive force claim will proceed against Lt. John Doe.

Accordingly, the Eighth Amendment claims for use of excessive force will proceed against defendants Franco, Casey, and Sacerdote, for the December 20, 2020, incident, and against defendant C/O John Doe, for the December 29, 2020, incident, in their individual capacities, for damages.

### C.   Other Constitutional Claims Against Lt. Franco

The Complaint asserts in a conclusory fashion that plaintiff was "subjected to ... due process violations[.]" Doc. #1 at 6, ¶1. As to Lt. Franco, plaintiff asserts: "On December 22, 2020 plaintiff was subjected to due process violations by means of defendant ... Franco failure to notify mental health and have a mental health professional intervene after plaintiff's verbal reporting of suicidal ideations, thus rendering ... Franco in direct violation of" DOC policy. Doc. #1 at 6, ¶2 (sic). Likewise, plaintiff alleges: "Franco did not excuse himself from the remainder of the incident, thus placing himself in a compromising conflicting environment and direct violation of administrative directive 6.5 use of force." Doc. #1 at 8, ¶9.  These allegations are insufficient to state a claim for violation of plaintiff's Due Process rights. "[S]tate

statutes do not create federally protected due process
entitlements to specific state-mandated procedures." Holcomb v.
Lykens, 337 F.3d 217, 224 (2d Cir. 2003). Thus, "allegations
that a prison official violated the procedures set forth" in
Administrative Directives "do not state a claim of a violation
of an inmate's constitutional rights." Olivencia v. Pun, No.
3:21CV00739(KAD), 2021 WL 3173137, at *4 (D. Conn. July 27,
2021).

     Plaintiff's only other substantive allegation against
Franco that can be read as attempting to assert a civil rights
violation states:

>     Between December 22, 2020 and December 29, 2020
>     plaintiff was subjected to civil rights violation by
>     means of ... Franco's retaliation to deny plaintiff
>     access to legal materials, law books, legal mail
>     containing Court address, while also denying plaintiff
>     recreation privileges and violating [A.D. 9.4]
>     restrictive statuses.

Doc. #1 at 7, ¶3. As noted above, the violation of an
Administrative Directive is insufficient to state a claim for
violation of the Due Process Clause.

     To the extent plaintiff alleges that he was denied access
to legal materials and recreation for a period of one week, that
allegation is insufficient to rise to the level of a
constitutional deprivation. "[P]laintiff does not allege that an
emergency existed or that his access to the courts was in any
way impaired," and thus the alleged seven-day "delay would not

have risen to the level of a constitutional deprivation."
Flowers v. Dalsheim, 826 F. Supp. 772, 775 (S.D.N.Y. 1993).
Plaintiff does not allege why he needed a "Court address" or
other materials during that seven-day period. Indeed, although
plaintiff filed another action in this Court on September 13,
2021, see Fraser v. Durant, et al., 3:21CV01190(SALM) (D. Conn.
Sept. 13, 2021), he did not file this action, challenging the
events of December 2020, until August 2022, strongly suggesting
that no emergency existed, and that the brief alleged denial of
legal materials caused no actual harm to plaintiff. Plaintiff
does not allege that he suffered any actual harm from the
alleged, brief deprivation. Cf. Harris v. Keane, 962 F. Supp.
397, 405 (S.D.N.Y. 1997) ("To sustain a claim based on actual
denial of access to the law library, the plaintiff must allege
that the deprivation proximately caused some prejudice or denial
of a legal claim."). "Plaintiff's conclusory allegations fail to
demonstrate that he was actually prejudiced in the pursuit of
any legal action." Beauvoir v. Falco, 345 F. Supp. 3d 350, 376
(S.D.N.Y. 2018).

Likewise, the allegation that plaintiff was denied
"recreation privileges" for seven days is insufficient to state
a claim. "Although a deprivation of all opportunities to
exercise over a substantial period of time might state a
violation of the Eighth Amendment, courts have held that

14

depriving a prisoner of exercise for a relatively brief period of time does not violate the Eighth Amendment." <u>Torrez v. Semple</u>, No. 3:17CV01232(SRU), 2018 WL 2303018, at *6 (D. Conn. May 21, 2018) (collecting cases); <u>see also</u> <u>Branham v. Meachum</u>, 77 F.3d 626, 631 (2d Cir. 1996) (finding that denial of outdoor recreation for 22 days did not violate inmate's Eighth Amendment rights).

Accordingly, to the extent the Complaint attempts to assert additional constitutional claims against Franco, other than the excessive force claim, those claims are **DISMISSED, without prejudice.**

### D.   Common Law Libel

Plaintiff asserts that defendants Franco, Casey, Sacerdote, Huckins and Therian committed the tort of libel against him, specifically: "[P]laintiff was the victim of multiple acts of libel by way of" defendants Franco, Casey, and Sacerdote's "issuance of disciplinary reports that was reviewed and authorized by" defendants Huckins and Therian." Doc. #1 at 7, ¶4 (sic). Plaintiff later refers to these as "false disciplinary reports[.]" <u>Id.</u> at 15, ¶33.

> At common law, to establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement.

Gleason v. Smolinski, 125 A.3d 920, 947 (Conn. 2015) (citation and quotation marks omitted). Under Connecticut law, a plaintiff must meet "somewhat particular pleading requirements for a defamation" claim. Naughton v. Gutcheon, No. 3:21CV00402(KAD), 2022 WL 2802335, at *4 n.14 (D. Conn. July 18, 2022).

"A claim of defamation must be pleaded with specificity, as the precise meaning and choice of words employed is a crucial factor in any evaluation of falsity. The allegations should set forth facts sufficient to apprise the defendant of the claim made against him." Stevens v. Helming, 135 A.3d 728, 732 n.3 (Conn. App. 2016) (citations and quotation marks omitted). In order to meet this pleading standard, a complaint "must, on its face, specifically identify what allegedly defamatory statements were made, by whom, and to whom. Imprecise pleading is not permitted in the context of alleged defamation[.]" Id. (citations and quotation marks omitted).

Here, the Complaint alleges in a conclusory fashion that "plaintiff was the victim of multiple acts of libel[.]" Doc. #1 at 7, ¶4. "There is nothing in this allegation specifying what statements were made, ... or to whom they were made. Thus, this allegation is legally insufficient to support a claim for defamation[.]" Berry v. Montilla, No. 3:16CV00530(AWT), 2018 WL 8729591, at *7 (D. Conn. Mar. 28, 2018). Indeed, plaintiff does

not identify any "third party" to whom any alleged false statements were made, nor does he allege what statements, precisely, were made and how they were false. Accordingly, all claims for libel are **DISMISSED, without prejudice**, as against all defendants.

### E.   Procedural Due Process -- Grimaldi and Rodriguez

Plaintiff asserts that defendant Grimaldi violated his Due Process rights by "finding him guilty" at the February 3, 2021, hearing, and that Rodriguez similarly violated his rights by "upholding said guilty verdict on February 19, 2021." Doc. #1 at 14, ¶30. He also challenges the sufficiency of the process he received at the hearing itself.

To prevail on a Fourteenth Amendment procedural due process claim, plaintiff "must be able to demonstrate (1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." Proctor v. LeClaire, 846 F.3d 597, 608 (2d Cir. 2017) (citations and quotation marks omitted). Plaintiff has failed to allege any actual deprivation of life, liberty, or property resulting from the conduct of his disciplinary hearing, his "conviction" after that hearing, or the denial of his appeal. He therefore has failed to adequately allege the first required element of a due process claim.

In the prison context, which involves persons whose

liberty interests have already been severely restricted because of their confinement in a prison, a prisoner cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). Courts must examine the actual punishment received, as well as the conditions and duration of the punishment. <u>See</u> <u>Davis v. Barrett</u>, 576 F.3d 129, 133–34 (2d Cir. 2009) (<u>per curiam</u>) (requiring a magistrate judge to compare conditions of confinement to those of prisoners in general population, as well as those in administrative and protective confinement); <u>Palmer v. Richards</u>, 364 F.3d 60, 64 (2d Cir. 2004) ("Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" (quoting <u>Wright v. Coughlin</u>, 132 F.3d 133, 136 (2d Cir. 1998)).

<u>Shakur v. McNeil</u>, No. 3:20CV00708(VAB), 2020 WL 4818906, at *5 (D. Conn. Aug. 17, 2020). Plaintiff here makes no allegation that the disciplinary hearing resulted in a change in conditions that "work[ed] a major disruption in his environment." <u>Sandrin</u>, 515 U.S. at 486.

Accordingly, plaintiff has failed to state a plausible claim for violation of his procedural due process rights in connection with the February 3, 2021, hearing, and later appeal. The claims against defendants Grimaldi and Rodriguez related to the hearing and appeal are therefore **DISMISSED, without prejudice**.

IV.   **CONCLUSION**

For the foregoing reasons, the Court enters the following orders:

- The case may proceed to service on plaintiff's Eighth Amendment **excessive force** claim against defendants **Franco, Casey, and Sacerdote,** for the December 20, 2020, incident, and against defendant **C/O John Doe,** for the December 29, 2020, incident, in their individual capacities, for damages.

- All other claims against defendant Franco are **DISMISSED, without prejudice.**

- All claims against defendants in their official capacities are **DISMISSED, without prejudice.**

- All claims against Lt. John Doe are **DISMISSED, without prejudice.**

- All common law defamation claims are **DISMISSED, without prejudice.**

- The Fourteenth Amendment **procedural due process** claims against defendants **Grimaldi and Rodriguez,** in their individual capacities, for damages, are **DISMISSED, without prejudice.**

The Court's determination that certain claims may proceed to service of process does <u>not</u> preclude the filing of a motion to dismiss by any defendant, as to any claim.

Plaintiff has <u>two options</u> as to how to proceed in response to this Initial Review Order:

**(1)  If plaintiff wishes to proceed with the Complaint on his Eighth Amendment excessive force claim against defendants Franco, Casey, and Sacerdote, for the December 20, 2020, incident, and against defendant C/O John Doe, for the December 29, 2020, incident, in their individual capacities, for damages, he may do so without further delay.** If plaintiff selects this option, he shall file a Notice on the docket on or before **October 21, 2022,** informing the Court that he elects to proceed with service as to the claims against defendants **Franco, Casey, Sacerdote, and C/O John Doe.** The Court will then immediately begin the effort to serve process on these defendants in their individual capacities.

*OR, IN THE ALTERNATIVE,*

**(2)  If plaintiff wishes to attempt to replead the claims dismissed above without prejudice to state a viable claim, he may file an Amended Complaint on or before** October 21, 2022. An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint.

20

The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If plaintiff elects to file an Amended Complaint, the original Complaint will <u>not</u> proceed to service of process on any defendant.

**If the Court receives no response from plaintiff by October 21, 2022, the Court will presume that plaintiff wishes to proceed on the original Complaint as to the claims permitted to go forward in this Order, and plaintiff will have to show good cause if he seeks to amend the Complaint in any manner in the future.**

<u>**CHANGES OF ADDRESS**</u>: If plaintiff changes his address at any time during the litigation of this case, he **MUST** file a Notice of Change of Address with the Court. **Failure to do so may result in the dismissal of the case.** Plaintiff must give notice of a new address even if he remains incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put a new address on a letter or filing without indicating that it is a new address. He should also notify the defendants or defense counsel of his new address.

Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court. He is advised that the Program may be used only to file documents with the Court. Discovery requests and responses should **<u>not</u>** be filed on the

docket, except when required in connection with a motion to compel or for protective order. See D. Conn. L. Civ. R. 5(f). Discovery requests and responses or objections must be served on defendants' counsel by regular mail.

It is so ordered this 21st day of September, 2022, at Bridgeport, Connecticut.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE